M. Zayas
amiya.angel@gmail.com

# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON

PLAINTIFF(S)

MYRIAM ZAYAS,
v.

DEFENDANT(S).

ANNETTE MESSITT,
Jeffrey Whitney,
Amber Whitney,
Pauline Duke,
David LaRaus,
Jennie Cowan,
Ann Danieli,

Case No.: 20-CV-00747  JCC
42 U.S. Code § 1983
Deprivation of Civil Rights
42 U.S. Code § 1985.Conspiracy to
interfere with civil rights
Official Misconduct
Adoption Prior to Reasonable Efforts

## JURISDICTION

1. Venue is properly located in the Western District of Washington at Seattle

2. Plaintiff claims federal jurisdiction pursuant to Article III § 2 which extends the jurisdiction to cases arising under the U.S. Constitution.

3. Plaintiff brings this suit pursuant to Title 42 U.S. Code § 1983 for violations of certain protections guaranteed to her by the Fourth and Fourteenth Amendments of the federal Constitution, by the Defendant under color of law in her capacity as a judge in the Superior Court of King County.

4. Plaintiff claims the Defendants who are state officials past or present, are believed to have violated Title 18 U.S. Code § 505.Seals of courts; signatures of judges or court officers. Whoever forges the signature of any judge, register, or other officer of any court of the United States, or of any Territory thereof, or forges or counterfeits the seal of any such court, or knowingly concurs in using any such forged or counterfeit signature or seal, for the purpose of authenticating any proceeding or document, or tenders in evidence any such proceeding or document with a false or counterfeit signature of any such judge, register, or other officer, or a false or counterfeit seal of the court, subscribed or attached thereto, knowing such signature or seal to be false or counterfeit, shall be fined under this title or imprisoned not more than five years, or both. "Whoever" includes "anyone" it doesn't specifically state whether it be a state official or normal person.

5. "[t]he doctrine of qualified immunity prevents government agents from being held personally liable for constitutional violations unless the violation was of 'clearly established' law." (William Baude)

## PARTIES

1.    Myriam Zayas (Zayas) is a resident of King County and resides in King County

Washington, she is the 39 yo mother of 5 children and adults, she lives in the City of

Kent, Washington in the Unites States.

2.    Defendant, ANNETTE MESSITT ("Judge Messitt"), at all times relevant hereto was/is the

Family Court Judge at the Regional Justice Center and Plaintiff's judge in her current

dependency matter. Messitt is sued for damages in her individual capacity and in her

official capacity within the meaning of 42 U.S.C. Section 1983, and at all times relevant hereto

acted under color of state law.

3. Defendants the "WHITNEY'S" Jeffrey and Amber Whitney at all times relevant  hereto is/was

the foster-to-adopt parents who immediately received "adoption assistance" too soon for any

reasonable efforts to have been made with respect to the Adoption and Safe Families Act of

1997. Upon further information and belief are both residents of King County Washington. The

adoption assistance was received illegally on the part of Judge Messitt lacking the proper judicial

determination required during a mandated emergency order #6, when such actions were deemed

prohibited by the court above, yet still she distributed all such funding for a period of going on 7

months today. Furthermore Judge Messitt received these federal funds illegally by using a

falsified forged document, which she herself filed to be true and correct on March 17th 2020. This

document is further explained throughout the rest of this complaint, and is called the Shelter Care

Hearing Order. Please see page 34 for further information.

4.      Defendant, PAULINE DUKE(hereinafter "Defendants")("court officials"),those under the direction of Judge Messitt at all times relevant hereto was/is the CASA at the Regional Justice Center and Plaintiff's CASA in her current dependency matter. PAULINE DUKE is sued for damages in her individual capacity within the meaning of 42 U.S.C. Section 1983, and at all times relevant hereto acted under color of state law.

5.      Defendant, DAVID LARAUS(hereinafter "Defendants")("court officials"), those under the direction of Judge Messitt at all times relevant hereto was/is the ATTORNEY GENERAL at the Regional Justice Center and Plaintiff's AG in the Plaintiffs current dependency matter. DAVID LARAUS is sued for damages in his individual capacity within the meaning of 42 U.S.C. Section 1983, and at all times relevant hereto acted under color of state law.

6.      Defendant, DEBBIE COWAN(hereinafter "Defendants")("court officials"), those under the direction of Judge Messitt at all times relevant hereto was/is the ATTORNEY FOR CASA at the Regional Justice Center and Plaintiff's CASA's attorney in the Plaintiffs current dependency matter. DEBBIE COWAN is sued for damages in her individual capacity within the meaning of 42 U.S.C. Section 1983, and at all times relevant hereto acted under color of state law.

Number 4-6 conspired with Judge Messitt and continue to cover the forgery, they have successfully manage to keep her child in foster care in retaliation to their lawsuit the Plaintiff filed against the social workers for being racist and sexist. All of them lack probable cause and they committed a class c felony by covering forgery and knowingly sitting on the docket, verbally testifying to the false document stating that Danieli is the one who in fact did sign the order, Plaintiff has all 3 of them on audio trying to convince the Plaintiff that Danieli was the judge on the 17th of March. Now they are deliberately trying to make her suffer for holding them accountable. They should all be fired. forgery and filing a falsified document to be true and correct is a crime, they are actively conspiring to keep the Plaintiff away from her child and have been for 205 days so far.

*Myriam Zayas*

7.  Defendant, ANN DANIELI(hereinafter "Defendants")those under the
direction of Judge Messitt at all times relevant hereto was/is the former commissioner at King
County Superior Court and assisted Judge Messitt in her crimes. ANN DANIELE is sued for
damages in her individual capacity.


On or about the 17th day of July, 2020 , in the County of  King, State of Washington, the
above-named Defendant Ann Danieli, with intent that conduct constituting the crime of
Rendering Criminal Assistance, to-wit: by sending Judge Messitt the forged document to alert
her that the Plaintiff was aware of Judge Messitts forgery and to assist her if needed in
covering the forgery, be performed, did agree with one or more persons to engage in or cause
the performance of that crime, and any one of such persons did take a substantial step in
pursuance of such agreement; contrary to Revised Code of Washington 9A.28.040 and RCW
9A.76.050 Rendering criminal assistance As used in RCW 9A.76.070, 9A.76.080, and
9A.76.090, a person "renders criminal assistance" if, with intent to prevent, hinder, or delay
the apprehension or prosecution of another person who he or she knows has committed a
crime or juvenile offense or is being sought by law enforcement officials for the commission of
a crime or juvenile offense or has escaped from a detention facility, he or she:
(2) Warns such person of impending discovery or apprehension;
(4) Prevents or obstructs, by use of force, deception, or threat, anyone from performing an act
that might aid in the discovery or apprehension of such person;

The court clerk, bailiff, and all parties related to the creation of the fake fraudulent audio,
connected to the shelter care hearing "minutes" added 5 months after March 17th 2020,
include David LaRaus, Jennie Cowan, Pauline Duke, all of them approved this false forged
document under oath at the Plaintiffs trial in their attempt to further their fraud, they
continue to conspire today and are now holding her child away from her without probable
cause for removal from day one.

Ann Danieli lacks any form of judicial immunity she does however have lawyer immunity
except she is not the Plaintiffs attorney nor was she at work when she committed this crime
being that it was 7am on July 17th 2020. Unless her office is open at 7am which according to
Google Anne Danieli Law Firm is not open at 7:00am.

The Plaintiff is not Ann Danielis client therefore should have no immunity. All parties worked
together to assist the core reason this case started "racial injustice" and "title funding" which
began in the warped and twisted minds of the Defendants in case number 20-cv-00981 JLR-
TLF who only remove and with hold children from caucasian parents they absolutely enjoy
doing this. Forcing their religion to children that they did not give birth to, taking children for
reasons that do not include child abuse which is against the law. But these corrupt family court
judges favor these racist social workers and not all are black but they all target white or half
white infants only. Ann Danieli has no judicial immunity. This will prove the Plaintiffs entire
case.

# JURY DEMAND

No jury trial requested.

# INTRODUCTION

If you can't already tell by my prior complaints I am not a lawyer, I also do not want the attorney general to throw out all my evidence as I stated in the last complaint.

These officials at the state level are corrupt they are writing Emergency orders that say, "only remove a child if its mission critical" the public would hope that it always is "mission critical" every time they remove anyone's child, otherwise a whole lot of children have been wrongfully removed.

Two forged and falsified documents filed on March 17th, 2020; a fake hearing was held no minutes exist on the docket. All parties in the directly related following cases covered this official misconduct for a period of 4 months: ~~20-cv-00650~~, ~~20-cv-01001~~, 20-cv-00981. I do not know how to sue people, I do not know what rules to follow, all I do know is that I have tried to complain to all complaint agencies and I have come to the conclusion that all those employed at these agencies may in fact be infertile and on the list for adopting a newborn from CPS, because they do nothing for my complaints.

The police stated this is not a crime against me.

# FACTS

1. Only about 1770 children die from a child abuse yearly (since 1980) out of 74 million in the US this accounts for 0.002% of the child population and does not give these court officials the right to commit felony forgery and other crimes against the freedom of a five-year-old. Nor does it excuse their civil rights violations against that child's mother, the Plaintiff.

2. The Plaintiff has been in contact with the CJC (commission of judicial conduct) and they stated they were actively investigating but they also said this in 2012, 2013, never did anything back then when she complained about another judge, so the Plaintiff is sure if they are investigating then they have to know what happened and refuse to do anything about it. 3 months ago, they replied acknowledging her complaint and the Plaintiffs allegations of unfairness and fraudulent documents in her attempted dependency.

3. Plaintiff did not know she was not allowed to communicate with the judge she has done time and was always told to "write a letter" to the judge. They make their email address public, so she thought it was okay to do. Plaintiff had absolutely no contact with her child for 6 weeks so emailing the judge seemed extremely required. On April 9th, 2020 the Defendants bailiff filed all of the emails that the Plaintiff sent to the Defendant asking why she signed the order to remove her child, directly on to her case. Plaintiff believes that none of the court officials involved have ever given birth at the level of cruelty they disperse.

4. The attorney general will say there is an open dependency for the Plaintiff, legally there can be no active dependency in the Plaintiffs name since the documents and hearings required for there to be one are fraudulent, forged and therefore void.

5. On or about the 16th of March 2020 the Plaintiffs 5-year-old child was removed from her daycare center, all schools were closed 3 days prior, stating it would be likely "months"

before reopening. There was no "oath or affirmation" given other than a declaration filed 2 times that day, 1014am and 149pm, neither have any proof that a hearing or affirmation or oath was given.

6. March 16th, 2020 The Defendant signed a removal order to remove the Plaintiffs child during COVID-19:

> *Emergency Order #6 20-0-12050-5 1. LIMITING MOTIONS AND COURT APPEARANCES IN FAMILY LAW MATTERS 2. ADDRESSING FAMILY LAW OPERATIONS AND SERVICES*

which ordered that no hearings be held unless telephonic due to the COVID-19 pandemic, unless special permission be granted, such permission must be requested, and the removal must be "mission critical"

7. On March 17th, 2020 at the Regional Justice Center in Kent Washington on 401 fourth Avenue, the Plaintiff attended a Shelter Care Hearing for her child or so she thought, at 830am. Plaintiff had no idea what could or could not happen or what rules to follow. The Plaintiff *assumed* taking children would be important enough to have court. That day all officials in the court room knowingly faked the hearing "acted" in their official duty, to the public it would seem as if they were doing their job when in fact they were breaking the law by violating the emergency order #6 and not going on the record for the hearing.

8. During the hearing that day the Defendant, who is the Plaintiffs judge, seemed to rush like she was in a hurry and Plaintiffs attorney told the Plaintiff to be quiet, Plaintiff thought this was odd. The Defendant agreed that Plaintiff should in fact be quiet. But the Plaintiff had so much to say. The Defendant did not care to hear her, smiling at the social worker throughout the hearing. The Defendant rolled her eyes when the Plaintiffs' lawyer spoke. Waving her right hand in a rolling gesture as if to hurry everyone up.

9. When the hearing was over the Defendant shooed the Plaintiff away with her hands when the Plaintiff attempted to speak and said that the medication, she was on was likely what caused the 1 dirty drug screen that removed her child the day before.

Defendant nodded her head and stated, "Okay bring in the doctors note." The
Defendant then waved the Plaintiff away like she was a flying insect.

10. After that hearing Plaintiff was never given any paperwork, except one sheet of paper
with resources for rental assistance handed directly to her from the social worker. The
court did not want the Plaintiff to do anything to get her child back what? No court
documents given to the Plaintiff. They also never asked her to sign anything

11. The Defendant and all court officials involved never went "on the record" at that hearing
on March 17th, 2020. Meaning there is no proof the hearing ever happened other than 2
documents filed on the docket that day. Those 2 documents were both forged with
another (former) judge's signature that was not there that day and was eligible to
practice law. According to WSBA website.

12. Throughout the entire 4 months of no visitation for all parents March-July 2020 the
Plaintiff requested from her free attorney over 20 times for in person visits but her
attorney refused to file this motion, Plaintiff sent her attorney the emergency order where
it stated parents were permitted to requesting these if they had special circumstances.
She would just ignore her. Plaintiff believes the Defendant told her attorney not to allow
any motions.

13. Due to COVID-19 the courts cancelled all future court hearings and the Defendant did
not want the Plaintiff to attend the hearing on the 18th of May 2020. Plaintiffs attorney did
not tell her this hearing was even going to happen, then stated she did not need to be
there, she had not had a hearing in months. This was torture directly from the Defendant
to the Plaintiff.

14. No minutes exist on the docket until May 18th, 2020 in Plaintiffs case. On that day the
Defendant forced the Plaintiff to have another attorney after firing the first one who
refused to motion for in person visits and ignored everything the Plaintiff requested, the
Defendant also told the Plaintiff she was NOT allowed to speak about what she wanted

to. The Defendant had no clue why the Plaintiffs child was removed. The Plaintiff has the audio to this and several other "hearings" that can be heard and do exist on the docket referenced to as "minutes." The Plaintiff has all the emails to and from her attorney proving her deliberate avoidance.

15. Plaintiff did not have access to it therefore had no clue about the forgery until July 13th, 2020, she always accused all of the Defendants of the Dependency Petition being falsified. The Plaintiff found the forgery after getting her court records from the clerk in her attempt to gather evidence for her allegations against the social workers for perjury. The only evidence Plaintiff found would not prove such a claim.

16. July 13th, 2020, Plaintiff searched for the person whose signature all claim was the judge at the hearing and sent the former commissioner an email asking if this was her signature. Instead of replying she sent the Plaintiffs email to the Defendant. The Defendant then redacted the former commissioners email address and forwarded the email to the Plaintiff stating, *"No ex parte communication."* Plaintiff has this email.

17. Every court date after the 18th of May court officials switched the judge each time and postponed, prolonged, and procrastinated, adding another 60 and 45 days on top of each hearing. Excuse after excuse.

18. The 4 months of being separated without touching her 5-year-old between March 17th, 2020 to July 2020 were indescribable, the Plaintiff has never experienced such confusion and emotional pain as she did that first 6 weeks her entire life. Plaintiff did not get to see, speak to, or hold her child for 6 weeks straight. She did not have a working camera on her phone, and limited Wi-Fi.

19. Plaintiffs counselor and doctor can both testify that the Plaintiff was in a severely depressed state mentally after this happened. Plaintiff told the Defendant everything that was happening, she was ignored.

20. On the top of her shelter care order a sentence that states "DUE TO PUBLIC HEALTH CRISIS" not to hold a mediation which was set for more than 2 months out. Proving all court officials were well aware it would be months before her next hearing.

21. On July 13th, 2020 the Plaintiff sent this email to the boss of her attorney that assisted in faking the shelter care hearing this was the day she found the forged shelter care order:

> *Email from Plaintiff: "Your employee committed a crime and I guess immunity might make it pass any jail time, but I never had a shelter care hearing. It's not on the books and the judge never signed the order. I knew I wasn't crazy. I knew it was them the entire time. Unless you can find a signed copy? They have had my child illegally for 4 months. Myriam Zayas"*

> *Reply from Supervisor Family Defense Unit: "I am sending you a copy of the signed shelter care order in your case that was entered on March 17, 2020.  The judicial officer presiding over your hearing was Pro Tem Commissioner Danieli, and you will see that she signed this order.  This is the order that is contained in the Court file."*

22. This supervisor then sent the Plaintiff a different copy of the forged order than the one filed to the docket, this one contained the signature of her attorney at the time and the attorney general.

23. The Washington state Constitution Section IV number 19 states a Judge is not permitted to practice law. This is why under the Judges (Defendants) WSBA license it says "No" under "Eligible to practice law". The signature of the person who signed Plaintiffs Shelter Care Order is "Eligible to Practice" "Yes". WSBA website who govern all legal officials in the state of Washington. Last updated January 2020. The commissioner who signed the Plaintiffs shelter care order was voted out in 2008, and currently is not working for King County Superior Court.

24. The Defendant performed acts under "color of law" that went beyond the bounds of her lawful authority, the Defendant was an official purporting to act in the performance of her official duties. Removing the protected parental rights of the Plaintiff and her child's

familial relation, during a lock down when the courts above specifically ordered for this to not happen.

25. The Defendant violated the Plaintiffs Fourteenth amendment right in the Bill of Rights, of the US constitution. While clothed in the authority of the state acting under the color of law the Defendant violated the Plaintiffs privileges and immunities; the Defendant deprived the Plaintiff of liberty, and her property, her child and parental rights without due process of law.

26. By not giving her a 72-hour hearing that was fair and valid. Also avoiding any and all hearings with the Plaintiff. The laws and rules created to protect the Plaintiffs civil rights, yet they were violated by the Defendant, removing equal protection of the laws the Defendant followed these laws with other parents. Because her child was removed during lock down the Defendant felt like she should be a victim of a crime. The Plaintiff was unprotected. The court officials all knew they committed and/or covered forgery against the freedom of a five-year-old child for one dirty drug screen and they were okay with this.

27. The Defendant violated the Plaintiffs Fourth amendment rights of the US constitution, by agreeing and signing an order to remove her child without probable cause, without oath or affirmation, and without having a shelter care hearing that was recorded, or transcribed, during a mandated lock down. The Defendant directed all those under her to pretend that they were having a court hearing this is likely why they all rushed through the hearing on March 17th, 2020.

28. By hiding this forged document from the Plaintiff, faking the entire hearing, avoiding the Plaintiff when she accused them of violating the governor's orders, the court officials all of them including the Defendant and especially the social workers have committed and/or directed others to commit all of the following:

a. RCW 9A.80.010 Official Misconduct deliberately removed her parental rights, committing an unauthorized act under the color of law.

b. RCW 42.20.100 Failure of duty by public Officer. March 17th, 2020

c. RCW 42.20.050 Public Officer making False Certificate. March 17th, 2020

d. RCW 43.06.220 State of emergency. March 16th, 2020 by deliberately violating the governor's orders Emergency order #6 and

e. RCW 9A.60.020 Forgery. forging a document for fear of being held accountable for removing a child when the court officials should not have. March 17th, 2020

f. 42 U.S. Code § 1985.Conspiracy to interfere with civil rights: The Defendant conspired with other court officials to fake the hearing on March 17th 2020. (pretend)

29. Defendant and those who worked under her direction engaged in a widespread, unwritten, custom and/or practice to disregard clearly writing policies prohibiting falsifying court documents, violating the rights of parents, and official misconduct and/or that decisions were made by King County Superior Court LJuCR, LFLR  with final policymaking authority contrary to express requirements prohibiting the falsifying of court documents, their acts all of them were official misconduct. The Defendant did herself, and/or directed those under her to file false and forged documents to the docket to be true and correct using malice on March 17th, 2020, at Maleng Regional Justice Center in Kent at 401 Fourth Avenue.

30. As a direct and proximate result of Defendants crimes and civil rights violations against Plaintiff, she and her child through her, have suffered and will continue to suffer severe and substantial damages; this damage includes loss of familial relations, and sacred bonds with her child, deliberately tortured by the Defendants actions for reason that do not include child abuse and lack probable cause for warrant to remove any and all of them at any time in their or the Plaintiffs life.

31.  Plaintiff has lost income due to paying child support when her child should be home,

she and her 5 year old child have suffered extreme and severe mental anguish and

emotional distress, loss of reputation, humiliation, embarrassment, inconvenience,

mental and emotional anguish, distress, pain and suffering, and other compensatory

damages.

32. The Defendant and those under her direction violated all of the following chapters LJuCr,

LFLR local rules in the Plaintiffs case:

TITLE II. SHELTER CARE PROCEEDINGS
TITLE III. DEPENDENCY PROCEEDINGS
TITLE IV. PROCEEDINGS TO TERMINATE PARENT-CHILD RELATIONSHIP

33. Plaintiffs child is only 5 years old the Defendants will be back, and this does account for

repeat injury by a family court judge in the state of Washington the Plaintiff has

documented proof of injuries from 2010-2013 for herself and her oldest children.

34. Section 1983 provides:

> *"Every person who, under color of any statute, ordinance, regulation, custom or
> usage, of any State or Territory … subjects, or causes to be subjected, any
> citizen of the United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the Constitution
> and laws, shall be liable to the party injured in an action at law, equity, or other
> proper proceeding for redress."*

# INJURY

1. Plaintiff missed her child losing her first and second tooth.

2. Plaintiff was not the one to teach her how to swim.

3. Plaintiff was not the "mother" to host her 6th birthday party.

4. Unhealthy weight loss, Vision loss from staring at the computer screen

5. Lost trust in authority of all kinds at the state level, police, sheriff, all of them highly unfavorable supporting fraud and unnecessary child removals during a lock down.

6. Depression, Severe mental anguish, emotional distress, anger, fear, physical pain from depression, high blood pressure, roller coaster depression, inability to cope, lost interest in life.

7. Plaintiffs child has suffered the greatest out of all by being separated during a mandatory lock down from her only parent, when she was not supposed to be according to governors' orders for a fake virus. She cries every single night and the Defendants in the other case continue to withhold weeks of visitation.

8. Plaintiffs bond and trust with her child is severely damaged, destroyed and no remedial actions have been made by the Defendant to fix this.

9. Plaintiff is paying right now $314 a month out of the maybe $700-750 she receives monthly for unemployment; her child was removed using a felony during a lock down when they were not permitted to even having a court hearing. Kelsey Owens forced foster placement for title funding. The Defendant is in charge of this title funding which the courts have likely been receiving illegally since the judicial order is invalid, and the shelter care order is fraudulent. They also never created a case plan within 60 days as required by the Adoption and Safe Families Act for any child to receive "Adoption Assistance"

## RELIEF

WHEREFORE, plaintiff Myriam Zayas, prays for judgment against the

Defendants as follows

1.  For special damages.

2.   For costs and expenses incurred in this proceeding;

3.  For filing fees;

4.  For interest on all special damages;

5.  In the event that the evidence shows that Defendants engaged in reckless or willful

conduct injuring Plaintiffs, Plaintiffs further pray for punitive damages against Defendants

in an amount to be determined to be fair and just, but not less than three times the sum of

special and general damages awarded; and

6.  For such other and further relief as is equitable and just.

7.  Child support paid back to the Plaintiff. (punitive)

8.  Plaintiff is requesting the judges salary until her child's 18th birthday.

## INJUNCTIVE RELIEF

1. All removals of all children should always be mission critical.

2. All judges no matter which court should know the details of the case they are presiding over especially when a child has been removed.

3. Family court judges should be held to a higher standard breaking apart families should never be done carelessly.

4. All parties should be required to read the discovery of all parents no matter how many pages it is.

5. Abolish the Adoption and Safe Families Act of 1997.

6. Remove the termination petition from the dependency order.

7. Make it a crime to withhold visitation from parents.

I.      **Certification and Closing**

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

A.      **For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:

09/03/2020

*Myriam Zayas*

Myriam Zayas

3.10 **Restraining Order**:

☐     The court signed a separate restraining order on this date.

☐     The restraining order entered pursuant to RCW 26.44.063 is incorporated into this order.

Placement of the child with _____ is contingent on continued compliance with the terms of this restraining order. Failure to comply with any and all terms of this order may result in removal of the child.

The person having physical custody of the child has an affirmative duty to assist in the enforcement of this restraining order and to notify law enforcement, DCYF, and the court as necessary to request assistance and/or report violations of the order.

3.11 **Child's Indian Status:**

Any party who subsequently receives information that provides a reason to know the child is an Indian child under 25 C.F.R. § 23.107 shall inform the court.

3.12 All parties shall appear at the next scheduled hearing (see page one).

3.13 Other:

☐ The child shall remain in court-ordered placement and comply with all rules of placement. Failure to comply may result in a finding of contempt and sanctions.

_____

_____

_____

_____

Dated: _____ MAR 17 2020 _____     _____

COMMISSIONER

**Ann Danieli**

Presented by:

_____

Assistant Attorney General
WSBA #

Copy Received. Approved for entry, notice of presentation waived.

_____     _____
Signature of **Child**                                   ☐ Signature of Child's Lawyer

_____
Print Name            WSBA No.

_____     _____
☐ Signature of **Mother**                           ☐ Signature of Mother's Lawyer
☐ Pro Se, Advised of Right to Counsel

_____
Print Name            WSBA No.

**Shelter Care Hearing Order** (SCOR) - Page 10 of 11
18 of page 32 9/18/2020
**WPF JU 02.0200** (10/2019) - JuCR 2.1, 2.3, 2.4; RCW 13.34.062, .065

20-cv-00747 JCC

☐ Signature of **Father**
☐ Pro Se, Advised of Right to Counsel

☐ Signature of Father's Lawyer

_____
Print Name                                        WSBA No.

☐ Signature of **Guardian or Legal Custodian**
☐ Pro Se, Advised of Right to Counsel

☐ Signature of Guardian or Legal Custodian's Lawyer

_____
Print Name                                        WSBA No.

☐ Signature of Child's **GAL**

_____
Print Name

☐ Signature of Lawyer for the Child's GAL

_____
Print Name                                        WSBA No.

Signature of **DCYF Representative**

_____
Print Name

Signature of DCYF Representative's Lawyer

_____
Print Name                                        WSBA No.

☐ Signature of **Tribal Representative**

_____
Print Name

☐ Signature

_____
Print Name                                        WSBA No.
Lawyer for _____

**Shelter Care Hearing Order** (SCOR) - Page 11 of 11
**WPF JU 02.0200** (10/2019) - JuCR 2.1, 2.3, 2.4; RCW 13.34.062, .065

20-cv-00747 JCC

## Ann E. Danieli

License Number:        12921

License Type:          Lawyer

Eligible To Practice:  Yes

License Status:        Active

WSBA Admit Date:       11/5/1982


## Annette M Messitt

License Number:        33023

License Type:          Lawyer

Eligible To Practice:  No

License Status:        Judicial

WSBA Admit Date:       11/18/2002

```
 1
 2                                              FILED
                                      KING COUNTY, WASHINGTON
 3                                         MAR 1 6 2020
 4                                            SEA
                                      SUPERIOR COURT CLERK
 5
 6
 7         IN THE SUPERIOR COURT OF THE STATE OF WASHINGTON
                      IN AND FOR KING COUNTY
 8
         IN THE MATTER OF               NO. 20-0-12050-5
 9       THE RESPONSE BY
         KING COUNTY SUPERIOR COURT     EMERGENCY ORDER NO #6
10       TO THE PUBLIC HEALTH
         EMERGENCY IN WASHINGTON        1.  LIMITING MOTIONS AND
11       STATE                              COURT APPEARANCES IN
                                            FAMILY LAW MATTERS
12
                                        2.  ADDRESSING FAMILY LAW
13                                          OPERATIONS/SERVICES
```

14          This matter comes before the Court on the public health emergency in Washington State.

15          IT IS HEREBY ORDERED that, based upon the findings made in King County Superior

16   Court Emergency Orders #1-5, the authority by Chief Justice Stephens' Order as outlined in King

17   County Superior Court Emergency Orders #2 and #5, and the authority vested in the Presiding

18   Judge for King County Superior Court:

19
20          1.    It is necessary to suspend or modify certain rules regarding Family Law

21   proceedings.  This includes LFLR 5, 6, 8, 13, and 17.

22          2.    Effective March 16, 2020, only motions deemed "mission critical" as defined

23   below may be set or confirmed on the Family Law Motions Calendar.  Motions filed prior to

24   March 16, 2020 that are not mission critical and have not yet been confirmed must be stricken or

25   continued to a date after April 24, 2020.  The court will strike, deny without prejudice, or not

confirm any motion noted in violation of this order and allow parties to re-note after April 24, 2020 (or such time regular operations are resumed).

3.     **Mission critical matters** are defined as follows:

- Domestic Violence Protection Orders
- Return hearings on motions for temporary restraining orders where personal safety is at risk.
- Motions for temporary orders or adequate cause where child safety is at risk, there is a risk of child abduction, or a party's basic financial survival is at issue (i.e., ability to maintain housing, basic necessities, and critical health care)
- Return on Warrant hearings
- Writs of Habeas Corpus and returns
- Weapons Surrender Compliance Calendar

Mission critical matters will be set and confirmed according to the Local Family Law Rules and heard by phone except that parties in protection order matters may appear in person, and writs and warrant returns will be heard in person.   Subject to further directive by the Chief Unified Family Court Judge (Chief UFC Judge), parties to protection order matters are encouraged, but not required, to appear telephonically.

4.     **Pending matters:**   Motions on the Family Law Motions calendars that were already **confirmed on or before March 13, 2020** will go forward and be heard telephonically unless permission is granted to appear in person.  The judicial officer may determine that no oral argument is required and so notify the parties.  Parties are encouraged to strike any confirmed hearing that is not mission critical, or to submit an agreed order continuing the hearing to a date after April 24th. Trials by affidavit for the week of March 16th will be conducted by phone unless the judicial officer determines that no oral argument is necessary.  Motions for child support adjustment scheduled for the week of March 16, 2020 will be decided without oral argument.

5.      Changes to Family Law Operations outlined in the attached Memorandum "Subject: Changes to Family Law Department Procedures-Step Down Plan" are ordered effective immediately.   The Chief UFC Judge may make further changes to Family Law Operations, including suspending such operations, as required to adapt to the changing public health situation.

6.      Status conferences and pretrial conferences before judges will be conducted telephonically unless the judge directs the parties to appear in person.

7.      Motions noted before the assigned judge without oral argument pursuant to LFLR 6 can continue to be noted and will be decided as resources permit.

8.      Motions for revision and mission critical matters defined in section 3 noted before judges will be set and decided according to the Local Family Law Rules.   In consultation with the parties and counsel, the assigned judge will decide whether non-mission critical motions are heard.  All motions will be heard telephonically unless directed otherwise.

9.      Trials will take place as determined by the assigned judge and the Chief UFC Judge.  Trials will be continued by agreement of the parties or upon request of one party for good cause shown related to COVID-19.  The trial judge may authorize videoconference or telephone appearances of witnesses, parties, and counsel as determined to be appropriate.

10.      This Order is effective until April 24, 2020 and shall be reviewed before then in light of the public health emergency as it then exists.

**So Ordered this 16th day of March, 2020.**



Hon. Jim Rogers, Presiding Judge
King County Superior Court



### KING COUNTY SUPERIOR COURT
**Memorandum**

---

To:       Family Law practitioners, Litigants, and Stakeholders
From:    Judge Helson (Chief Unified Family Court Judge)
Date:     March 10, 2020

**Subject: Changes to Family Law Procedures - Step-Down Plan**
*Effective March 16, 2020, we are at Step 3 of this stepdown plan.*

**Parties and counsel are encouraged to continue to check the Superior Court website for updated information about this evolving situation.  The Family Law web pages have specific information about arranging telephonic appearances.**

Almost all hearings will be conducted telephonically.  If you are scheduled for an in-person hearing, please consider the following guidance we have received:
- If you are sick with flu-like symptoms, please stay home
- People at higher risk of severe illness should stay home and away from large groups of people as much as possible, including public places with lots of people and larger gatherings where they will be in close contact with others.  People at higher risk include:
  - People 60 and older
  - People with underlying health conditions including heart disease, lung disease, or diabetes
  - People who have weakened immune systems
  - People who are pregnant

The Unified Family Court, Family Law Motions and Family Court Operations will be modifying procedures and stepping down as follows:

**Step 1:**  Implemented effective 3/10/20

### <u>Family Law Motions</u>

Family Law litigants and attorneys are encouraged to appear by phone if possible; the court will liberally accommodate requests to appear by phone.

Litigants and attorneys are encouraged to limit motions when possible and are encouraged to file only motions regarding emergent issues.

**Status Conference/Non-Compliance Calendar**

The Family Law Bar has been encouraged to request phone appearances for the SC/NC calendar.

Beginning Friday, March 13, 2020 until further notice, the SC/NC calendar will be conducted via phone and email – parties will be directed to email the designated Status Conference box and staff will respond and determine whether there will be a phone hearing or whether the matter can be addressed on a paper review or via e-mail.

Early Resolution Case Managers (ERCMs) will continue to assist pro se litigants by phone and e-mail and draft orders. ERCMs will be available to assist pro se litigants who appear at the courthouse for the calendar.

**Weapons Surrender Calendar**

Requests for telephone appearances will be approved absent a compelling reason not to do so.

To the extent it is possible to do so, the calendar will be reviewed in advance and parties will be advised that they do not need to appear if:
- They have filed a Declaration of Non-Surrender and there is no conflicting information regarding firearms; or
- The underlying order has been dismissed/denied;
- They have filed a Proof of Surrender of firearms that appears to match up with the DV Firearms Information provided by the prosecutor's office.

*For all calendars where parties appear in person, people will be encouraged to spread out in the courtroom, may be asked to leave and come back at specified times so that fewer people are in the courtroom, and/or may be provided with an opportunity to be called on their cell phone to return to the courtroom.*

**Family Court Services / Family Court Operations**

Family Court Services will continue as normal to maintain case flow but will attempt to have as much as possible take place by phone and e-mail rather than requiring in-person meetings.  At the supervisor's discretion and with director approval, hours where the door is opened may be reduced.

Family Court Services will conduct interviews via phone whenever possible
Home visits will be completed only when necessary – prior to completing any home visit, steps will be taken to ensure there is not a health risk to the employee.

We will evaluate whether parent/child observations can be conducted in a way that does not put staff at risk so that we can continue parent/child observations unless a party requests to be excused because of concerns of exposure during transportation.

Adoptions will shift to only telephonic appointments.

Participants who register for the FLO or Parent Seminar will be sent the class materials and asked to return a certificate/declaration that they have read the materials.  Staff will file the returned certificates as they currently file the completion certificates. Participants will continue to register to attend the classes on a particular date so that, once normal operations resume, classes can promptly resume in person.

The Family Law Information Center will shift to support a telephonic/email model of assistance.  FLIC will be open by appointment only.

ERCMs will assess their ability to perform in person mediations and may work with litigants via phone when possible.

## UFC – Judges

Pretrial Conferences will be conducted by phone when possible.

Motions will be decided without oral argument when possible, or with telephone argument.

Trials will be managed by individual judges.  Agreed continuances will generally be granted.  Witness appearances by phone should be granted liberally.  When there are no parties or counsel who are at heightened risk (either of being ill or for serious consequences if they were to get ill), it is anticipated that trials will continue with sensible health precautions taken (i.e., people keeping social distance, washing hands, using sanitizer, wiping down counsel table).

**Step 2:**  To be implemented if the situation worsens but is short of Step 3.

1. *All* FLIC, ERCM and FCS work will be conducted by phone/e-mail with no in-person contact.

2. All Family Law motions and judge motions that have oral argument requested will be reviewed and the judicial officer will determine whether oral argument is necessary or will be conducted by phone.

**Step 3:**  To be implemented if a pandemic is declared or if there is a significant loss of staffing.  ***Step 3 is in effect as of 3/16/20***.

Only essential functions will remain, to include:

**Mission-Critical Hearings**

- Domestic Violence Protection Orders
- Return hearings on motions for temporary restraining orders where personal safety is at risk.
- Motions for temporary orders or adequate cause where child safety is at risk, there is a risk of child abduction, or where a party's basic financial survival is at issue (i.e., the ability to maintain housing, basic necessities, and critical health care)
- Return on Warrant hearings
- Writs of Habeas Corpus and returns
- Weapons Surrender Compliance Calendar

Motions for revision on mission-critical matters and other motions on mission critical matters that are to be noted before assigned judges will be decided.  Motions without oral argument, non-mission critical motions, and trials will continue to be heard by assigned judges on an as-able basis.


We acknowledge that COVID-19 is anticipated to impact our community for many months ahead.  With this in mind, we continue to assess the future impacts of COVID-19, and the Family Law Department will continue to discuss altering processes aimed to protect the health and safety of everyone at our court facilities.

Thank you,

Judge Janet M. Helson
Chief Unified Family Court Judge

*Myriam Zayas*

08/31/2020
Myriam Zayas

Amended  09/18/2020 to correct some dates and times and add injury and relief.

NOW COMES the Plaintiff, MYRIAM ZAYAS, by and through herself and for her Complaint under Section 1983 for the counts described, including procedural due process violations against the Plaintiff by the Defendant and those she instructed to and conspired with in committing these unauthorized acts,  Plaintiff states:

1.      On and before March 16th, 2020, the Plaintiff, MYRIAM ZAYAS resided at 27369 129th place SE Kent WA 98030.

2.      On and before March 16th, 2020, the Defendant and those under her direction, all of them, were and are presently employed at 401 Fourth Avenue Kent WA 98032, by King County Courts for Washington state, they are clothed under the color of state law as a state official.

3.      On March 16th, 2020, at approximately 10:14am, and at all times relevant to this claim, Defendant, KELSEY OWENS, and Judge ANNETE MESSITT were pretending to act in their official duty, they approved a warrant for the removal of Plaintiffs child without oath or affirmation before the courts, and without probable cause.

4.      No such documentation of an oath or affirmation in the form of transcription or audio recording exist on the court docket in the name of the Plaintiff or her minor child, stating the reason for her removal sworn before an approved state official, Plaintiffs child was removed by the Defendant KELSEY OWENS from her daycare center at around 11am on or about March 16th 2020.

5.      No such documentation of a shelter care hearing which was written in pen into the case schedule in the name of the Plaintiff supposedly  occurred March 17th 2020 at 830am, and at all times relevant to this claim,  there is no transcription or audio recording that exist on the court docket in the name of the Plaintiff or her minor child referencing this hearing ever occurred, stating the reason for her child's removal, allowing the Plaintiff to cross examine any witnesses. No hearing exists on the record for the Plaintiff at all, this is required by law within 72 hours, following the removal of the Plaintiffs minor child one day prior.

6.      There were 2 other families in the courthouse on March 17th, 2020 at 401 Fourth Avenue Kent WA 98032, that day who both also likely have forged court orders and or missing hearings altogether. These parents likely have no clue of these events, or forged documents.

7.      The only things that occurred were documents filed to the Plaintiffs case 2x on this day March 17th, 2020 these filings consist of 2 forged fraudulent documents in the Plaintiffs name and that of her minor child. These 2 documents are believed to have been added by KELSEY OWENS. These documents also contain a Dependency Petition filed on March 16th, 2020 where the Defendants spelled the Plaintiffs child's name wrong 3 times in one single document. This proves careless willful negligence, on the part of the Defendant, they were plainly incompetent.

9.      If the Defendants actions were lawful why sign another name?

10.     Notwithstanding that duty, at that same time and place there was an active emergency order #6 in affect by governor Inslee of Washington state that was to be followed by all court officials throughout the state, this order stated that no children be removed unless "mission critical" and in such case they must be granted permission prior to the hearing, otherwise court shall be continued until after April 24th 2020. Effective March 16th, 2020 and written on March 10th, 2020.

11.     On March 16th, 2020, the Plaintiff was injured, upon losing custody of her child the Plaintiff suffered from long lasting irreparable repeated injury, severe mental and emotional anguish, as a direct and proximal result of the Defendants unlawful official misconduct, which included evil intent, trickery, the Defendants all of them acted with deliberate indifference, when they committed these unauthorized acts, which include violating a number of JuCR 2.2 Superior Court Rules, the Defendants also violated RCW 9A.80.010, RCW 42.20.100, RCW 43.06.220, against the Plaintiff and her 5 year old child.

12.     The worst and likely most damaging part of their unlawful actions in number 10 are that the Defendants covered and hid their crimes for a period of more than 6 months. Beginning March 17th, 2020 until today. Refusing Plaintiffs requests to have court hearings regarding visitation with her child, she requested this type of hearing for many months and she was ignored deliberately by the Defendants, for their fear she would uncover their crimes.

13.     On or about July 13th, 2020. The Plaintiff obtained the docket list in its entirety from her child's case, from the Kent court clerk at the Regional Justice Center, she would also obtain the forged shelter care hearing order and authorization for medical care for her child, forged as well. Filed on March 17th, 2020. The signature on these 2 documents are not of the judge in the Plaintiffs case. They are the signature of a practicing lawyer.

14.     On or about Friday July 17th, 2020 at 720am the Plaintiff sent an email to the person who she thought signed her shelter care hearing order, she found this person's email address on an old blog. On the Monday following July 19th, 2020 at 8:55pm Judge Messitt forwarded this email the Plaintiff sent, as an attachment to the Plaintiff. Along with redacting the original recipients email address, directly from the bailiff of Judge Messitt she stated that there is no "ex-parte communication" allowed. Confirming the 2 are homies, and willing to cover for one another.

15.     The Defendants all of them in related cases as well as this case are guilty of one or more of the following acts and/or omissions:

    a.  Violating Governor's emergency order #6 written March 10th, 2020. 2x

    b.  Committing a number of unauthorized acts by faking the Plaintiffs court hearing. 03/17/20

    c.  Removing Plaintiffs protected fundamental rights without probable cause. 4x

    d.  Removing Plaintiffs protected rights acting with evil intent and malice. 2x

    e.  Removing Plaintiffs protected fundamental rights using forgery and fraud. 1x

    f.  Removing Plaintiffs protected rights without granting her due process. 2x

    g.  Filing fraudulent documents to be true in their effort to remove her rights.2x

    h.  Actions committed by the Defendants are considered crimes against the Plaintiff

    i.  The Defendant never made remedial efforts to correct their actions. 4months

    j.  Defendant also directed those around them to try and trick the Plaintiff.

16.     One or more of these acts and/or omissions of the Defendants was a proximate result of their law breaking, and/or assisting/directing other state officials to break the law, the state officials conspired together to violate the rights of the Plaintiff in committing rule violations, planning, and plotting their acts of fraud, deceit and official misconduct, knowingly and with evil intent. The Defendant and those working by her direction, purported to be acting in their official duty, while knowingly violated the civil rights of Plaintiff and her child, repeatedly over and over again, over a long period of time. 6+months.

17.     As a direct and proximate result of one or more of these acts and/or omissions by the Defendant and/or those court officials she instructed to act on her behalf, Plaintiff, MYRIAM ZAYAS has been injured, damaged and this damage is permanent and ongoing; has in the past and will in the future, incur legal obligations for defense against future harassment by state officials, felonious court officials,  that discriminate, play favorites to men, and target her unfairly taking advantage of her lack of knowledge or income, future and past hospital, medical, nursing, mental health, heart problems, rehabilitative and related services and treatment; has lost wages and will stand to lose wages and job opportunities in the future and past; has been caused to suffer physical & emotional pain, depression, severe mental anguish, mental health disability,  permanent mental health diagnosis and inconvenience; lost bonds and trust from her children, embarrassment, wrinkles, stress, hair loss, loss of relationships,

friendships, social life, community trust, support, lifelong trauma for all of her children some who are now young adults, they suffered the most undeserving pain no child should have to go through unless the mission is "critical", all of which injuries and conditions are permanent including financial and economic losses for the Plaintiff and all of her children. Even her children not yet born, are at risk of being stolen in the future, Defendant and those who work under her direct order, always severely lack probable cause. Her discovery is riddled with unlawful conspiring events facilitated by the Defendants court officials and social workers under her direction, especially incompetent social workers, surrounding her most recent child birth.

18.     Plaintiff has complained over 100 times since 2011 about crooked family court judges that work with CPS, via on line, postal mail, to the Attorney General of Washington, Senator of Washington, Commission for Judicial Conduct, Ombud's for DCYF, they all have heard her complaints loud and clear and ignored avoided, denied, rerouted, minimized, failed over and over and over again for 2 decades. These "complaint agencies" are USELESS, incompetent, and should be VOIDED eternally, fired, permanently defunded and penalized for their repeated idiocy.

19.     All employed at these agencies are either blind or on the list to adopt a newborn from CPS. It is insane it took the Plaintiff this long and she had to learn how to sue the state on her own, no lawyer likely on the wait-list for a newborn as well, would ever even respond, or help her. This is a felony and even the chief of police referred the Plaintiff to a detective who informed her this is not a crime against her or her child.

20.     WHEREFORE the Plaintiff, MYRIAM ZAYAS demands much deserved punitive, monetary, special, general, compensatory, all of the above damages paid to her and her adult children by the Defendant. With holding visitation 6 weeks, then 4 months should be considered torture, especially using felony forgery on the court order, filing it with malice, during mandated lock down when the above courts said not to remove children.

21.     The Plaintiff begged the Defendant for in person visits with her toddler, who often cried and hid from the camera, she was ignored avoided and thrown in the garbage the Plaintiff and her child was by the Defendant. The Defendant broke a 5-year-old girls' heart, using fraud, deceit, felony forgery, trickery, and the mission was never critical. Uttering a false instrument against the freedom of a 5-year-old. The Defendant committed a felony, RCW 9A.60.020. Covering forgery, and forging the document are both the same crime and punishment, for a period of 6 months.

22. The Defendants trusted attorney general has since obtained the Plaintiffs entire medical record over 2000 pages and have since found 2 dirty drug screens over 40 years, this is their definition of "child abuse" the contents of the Plaintiffs urine. Crooked corrupt court officials, need to drug screen themselves.

1.  King county government should be ashamed of themselves this is obvious common behavior. They all know they are bullet proof and will get away with this so they will of course keep doing it.

2. The judge and all court officials hide the termination petition inside the dependency order without explaining to the biological parents that as soon as they sign the adoption process begins. These parents have no clue. the adopting parents do because adoption assistance begins immediately.

3. Since 1997 US foster to adopt parents have been adopting stolen children and immediately receiving payout for these adoptions. Thats why parents are going nuts committing suicide. CPS is selling their children for "adoption assistance" and title funding.  This funding goes on until that child's 21st birthday. High end welfare for hopeful adopting parents.

4. The only 2 goals set after that dependency order is signed is Termination and Adoption. Reunification would defeat the purpose and is prohibited from being funded under ASFA of 1997.

*Myriam Zayas*

Amended 09/18/2020 Myriam Zayas

Normally punitive damages are not awarded except by a jury at trial, and especially not in the case of such a high government official, the immunity is so solid. However the Plaintiff believes that for this reason, the audacity of the Defendant Messitt's actions give more reason to awarding such damages, this was crime against a child not just the Plaintiff.

1. The primary purposes of punitive damages are punishment and deterrence of like conduct by the wrongdoer and others. "Malice" means "conduct which is intended by the Defendant to cause injury to the Plaintiff , or despicable conduct which is carried on by the Defendant with a willful and conscious disregard of the rights or safety of others.

2. "Fraud" for purposes of a punitive damages award means "an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury."

3. Federal Civil Rights Act (42 U.S.C § 1983) punitive damages are recoverable against an individual "…when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.

4. Punitive damages may properly be imposed to further a State's legitimate interests in punishing unlawful conduct and deterring its repetition.

Myriam Zayas
10/01/2020

*Myriam Zayas*

The Whitney's are only charged with Adoption prior to reasonable efforts NO DAMAGES are being asked from them.

1. Defendants Jeffery and Amber Whitney have filed for a restraining against the Plaintiff claiming to fear for their lives that the Plaintiff is going to cause harm to their children.

2. The Whitney's do not seem to be afraid while they continue to take the Plaintiffs child on extended trips and every weekend without a care in the world while the Plaintiff misses many visits. they brag that the Plaintiffs child would rather them be her parent.

3. The Whitney's call the Plaintiff names like "mentally ill" in front of her 5 year old child. The Plaintiffs child does not live with them anymore because of their "fear" of the Plaintiff.

4. The Whitney's refer to themselves as "Foster Mommy and Daddy" telling the Plaintiffs child they are going to take her on a "Daddy Daughter Date" in the end of July 2020.

5. The Whitney's refuse to comb the Plaintiffs child's hair.

6. The Whitney's have taken the Plaintiffs child to church and taught her how to pray.

7. The Whitney's have received "adoption assistance" since day one of placement, so their plan has been and still remains to adopt the Plaintiffs child.

8. The Whitney's have taken away the Plaintiffs child's bike stating it was too "boyish" and have since purchased her child a new more girly bike.

9. The Whitney's do not have the permission of the Plaintiff to adopt her child, the Plaintiff has not signed a Dependency Order for adoption assistance to begin.

10. All paid foster-to-adopt parents should be made aware that  they should not ever refer to themselves as mother or father, even with the word foster in front of it. Father and mother is reserved for those who sacrifice to care for their children and do not require "adoption assistance" to care for their children.

11. This has been common practice to immediately, to begin the adoption process and the foster-to-adopt parents are very aware of this but the biological parents have no clue their child is being adopted, this needs to end. They are hiding the termination petition in the Dependency Order and tricking the parents to sign it.

*Myriam Zayas*

Myriam Zayas amended 10/01/2020